IN THE SUPERIOR COURT
FOR THE DISTRICT OF COLUMBIA

CHARMAIN TAYLOR
2836 Robinson Place, S.E.
#102
Washington, DC 20020

        Plaintiff,

v.

TARIQUE ROBERTS
Individually and
in official capacity,
6500 5th Street, N.W.
Washington, D.C. 20001

   and

OFFICER JOHN DOE
Individually and
in official capacity,
6500 5th Street, N.W.
Washington, D.C. 20001

        Defendants

Case No.: 2024-CAB-002316

## COMPLAINT AND DEMAND FOR JURY TRIAL

Comes now, CHARMAIN TAYLOR, by and through her attorney, RANDY EVAN MCDONALD, ESQ., and brings this action against the Defendants, TARIQUE ROBERTS and OFFICER JOHN DOE of the WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY ("WMATA") and demands a jury trial and alleges the following:

### INTRODUCTION

1. On August 23, 2023, Plaintiff Charmain Taylor was dropping her school aged child off at the Congress Heights Metro

Station in Washington, D.C., when she encountered Defendant Officer Tarique Roberts and Defendant Officer John Doe. During the encounter, Defendant Officer Roberts confronted Ms. Taylor over the minor child's lack of a fare card which was almost immediately remedied by a stranger who had an extra fare card. Dissatisfied with this outcome, Officer Roberts, without provocation or justification, assaulted Ms. Taylor causing significant injuries to Ms. Taylor.

2.   Defendant Officer John Doe had every opportunity to intervene and/or prevent Defendant Officer Roberts from assaulting and battering Ms. Taylor but chose not to do so.

3.   Defendant Officer Roberts and Defendant Officer John Doe violated Ms. Taylor's rights under the Fourth Amendment to the Constitution of the United States through their actions fully described below.

## JURISDICTION AND VENUE

4.   Subject matter jurisdiction is vested in this Court pursuant to D.C. Code § 11-921.

5.   This Court has personal jurisdiction over the Defendants pursuant to D.C. Code §§ 13-422 & 13-423(a)(3).

6.   Venue is proper in this Court because the events or omissions giving rise to this action occurred in the District of Columbia.

## PARTIES

7. The Plaintiff, CHARMAIN TAYLOR ("Plaintiff") now and at all times relevant to this claim, has been a resident at 2836 Robinson Place, S.E., #102, in Washington, DC.

8. Defendant, Officer TARIQUE ROBERTS is sued in his individual and official capacity, and is now, and was at all times relevant hereto, an officer of the Metro Transit Police Department.

9. In addition to the named Defendant, an unknown employee of the Metro Transit Police Department is sued herein in their individual and official capacities under the fictitious name of JOHN DOE because their true names, capacities and/or degree of responsibility for the acts alleged herein are unknown to Plaintiff at this time. When Plaintiff ascertains this information, she will amend this Complaint accordingly. The Unnamed John Doe Officer is or was at all times mentioned herein an employee of the WMATA's Metro Transit Police Department ("MTPD"). Upon information and belief, Unnamed John Doe Officer is legally liable to the Plaintiff. The defendant, Officer JOHN DOE, acted under color of law in his capacity as a law enforcement officer employed by the WMATA and MTPD.

10. At all times relevant to this action, the Defendant Police Officers were acting under color of law under their authority as a Police Officers of WMATA's MTPD, and under color

3

of the statutes, ordinances, regulations of the District of Columbia and policies, customs and usage of the MTPD.

11. At all relevant times, the Defendant Officers wore the apparel of the WMATA MTPD, were on active duty as officers of the WMATA MTPD, and acted under their authority as officers of the WMATA MTPD.

### STATEMENT OF FACTS

12. On Wednesday, August 23, 2023, between approximately 9:00 a.m. and 9:30 a.m., Ms. Taylor was dropping her school aged son off at the Congress Heights train station located in Washington, DC.

13. At no relevant time during did Ms. Taylor violate any law.

14. Ms. Taylor took her son into the station and prepared to watch him board the train.

15. At that time, WMATA and DC Department of Transportation were set to implement a program known as "Kids Ride Free" for children going to school.

16. The Kids Ride Free program allowed elementary or secondary students to ride on metrorail free of charge. The program was set to begin on the same day that District of Columbia Public Schools began school, August 28, 2023.

17. Ms. Taylor's child, however, attended a charter school which had already begun by August 23, 2023.

4

18. Upon arriving at the train station, the minor child attempted to go through the turnstile but did not have a fare card.

19. The train was arriving in less than one minute so the child then went through the turnstile and was stopped by WMATA Officer Tarique Roberts.

20. Ms. Taylor asked Officer Roberts to let the child ride to school and reminded Officer Roberts of the forthcoming Kids Ride Free program. However, before any further conversation could commence, a stranger offered the minor child a fare card which the boy took and headed onto the arriving train, which arrived a few seconds after the child received the card.

21. Ms. Taylor then attempted to walk away and back towards her awaiting vehicle. Officer Roberts insisted that Ms. Taylor stay and listen to him as he harassed, harangued, and berated her.

22. As Ms. Taylor had violated no law, she exercised her right to be left alone and attempted to begin walking towards the escalators to her car.

23. Without justification and for no apparent reason, Officer Roberts pushed Ms. Taylor with enough force that she had to brace herself on a railing to keep from falling.

24. Ms. Taylor was shocked and startled by the abuse and angrily stood to her feet and again attempted to walk towards her vehicle.

25. After Ms. Taylor again rejected Officer Roberts's overtures, he became infuriated. Officer Roberts then followed her a few steps, he deployed his WMATA issued pepper spray directly into Ms. Taylor's face, and yanked her to the ground by pulling her hair - even though Ms. Taylor had violated no law.

26. Ms. Taylor begged Officer Roberts to allow her to leave and continued to try to leave the station, as she had committed no crime and was not interested in any further interactions with Officer Roberts.

27. Ms. Taylor began to cough, gasp for air and scream in agony from the pain of the assault and the burn of the pepper spray.

28. Officer Roberts refused to stop the assault. Instead, he attempted to bend Ms. Taylor's arms in unnatural directions while trying to handcuff Ms. Taylor which caused Ms. Taylor significant pain. Officer Roberts further forcefully squeezed Ms. Taylor's wrist and placed his knee in her side.

29. Ms. Taylor, who was blinded and her eyes severely burning, begged and pleaded with Officer Roberts to discontinue his assault on her.

6

30. A second WMATA Officer, Officer John Doe (name unknown), came to assist Officer Roberts with the assault of Ms. Taylor.

31. While on the ground, Officer Roberts, who is significantly larger in stature than Ms. Taylor, began choking Ms. Taylor and continued to dig his knee into Ms. Taylor's stomach.

32. While Ms. Taylor was lying on her back and Officer Roberts had his knee in her stomach, the officers ordered Ms. Taylor to turn over which she could not do because the officer's knee was in her stomach. Ms. Taylor continued to beg the officers to stop assaulting her but they continued the assault and kept saying "stop resisting".

33. A bystander's cellphone video contradicts the idea that Ms. Taylor was resisting arrest. Ms. Taylor could not resist the arrest even if she so desired as she was still blinded and injured from the earlier deployment of the officer's pepper spray and the officer had his knee in her stomach while issuing orders to Ms. Taylor.

34. Throughout the attack Ms. Taylor was confused and feared for her life because she had not broken any laws.

35. At all times relevant to this action, the officers were acting under color of law under their authority as a police officers of WMATA, and under color of the statutes, ordinances,

7

regulations of the State of Maryland, District of Columbia and Commonwealth of Virginia and policies, customs and usage of WMATA. Specifically, at the time of the assault the officers:

    a. wore the apparel of WMATA;

    b. used the resources of WMATA; and,

    c. was on active duty as officers of WMATA.

36. An internal affairs investigation was initiated regarding the assault of Ms. Taylor. The results of this investigation are unknown.

37. Ms. Taylor was ultimately arrested by the Defendants and taken to D.C. Superior Court, where the "charges" against her were "no papered".

38. The assault left Ms. Taylor in pain and with scratches, bruises and post-traumatic stress disorder. She could not see out of one of her eyes for several days.

## CLAIMS FOR RELIEF

### First Claim for Relief
### Excessive Force and Unlawful Search and Seizure
### (Against Officer Roberts and Officer Doe)

39. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

40. 42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of

8

> the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress...

41. Ms. Taylor in this action is a citizen of the United States and all of the individual Defendant officers to this claim are persons for purpose of 42 U.S.C. § 1983.

42. Defendants Officer Roberts and Officer John Doe, at all times relevant hereto, were acting under the color of state law in their capacity as MTPD officers and their acts or omissions were conducted within the scope of their official duties or employment.

43. Ms. Taylor did not engage in any criminal conduct.

44. Ms. Taylor was not a threat to the safety of the police, herself, or others.

45. Ms. Taylor did not resist arrest or evade arrest by flight.

46. Ms. Taylor had a clearly established constitutional right under the Fourth Amendment to be secure in her person from unreasonable seizure through excessive force.

47. Any reasonable police officer knows or should have known of these rights at the time of the complained of conduct

as the rights were clearly established at the time of the complained of conduct.

48. Defendant Officer Roberts and Defendant Officer John Does' actions and use of force, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them and violated the Fourth Amendment rights of Ms. Taylor.

49. Defendants Officer Roberts and Defendant Officer John Does' actions and use of force, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Ms. Taylor's federally protected rights. The force used by these Defendant officers shocks the conscience and violated Ms. Taylor's rights under the Fourth Amendment of the Constitution of the United States.

50. Defendant Officer Roberts and Defendant Officer John Doe unlawfully seized Ms. Taylor by means of objectively unreasonable, excessive and conscious shocking physical force, thereby unreasonably depriving Ms. Taylor of her freedom.

51. The force used constituted deadly force in that it could have caused death when the officer placed his knee in Ms. Taylor's stomach and attempted to choke Ms. Taylor, and these actions did, in fact, cause serious bodily injury.

52. Defendant Officer Roberts and Defendant Officer John Does engaged in the conduct described in this Complaint

willfully, maliciously, in bad faith, and in reckless disregard of the Ms. Taylor's federally protected constitutional rights.

53. Defendant Officer Roberts and Defendant Officer John Does did so with shocking and willful indifference to Ms. Taylor's rights and their conscious awareness that they would cause Ms. Taylor severe physical and emotional injuries.

54. The acts or omissions of Defendant Officer Roberts and Defendant John Doe Officers were the moving force behind Ms. Taylor's injuries.

55. The acts or omissions of Defendant Officer Roberts and Defendant John Doe as described herein intentionally deprived Ms. Taylor of her constitutional rights and caused her other damages.

56. Defendant Officer Roberts and Defendant Officer John Does, by means of physical force and show of authority complained of herein, restrained the liberty of Ms. Taylor.

57. Given the circumstances, no reasonable person in Ms. Taylor's position would have believed herself free to leave.

58. Ms. Taylor submitted to the authority of Defendant Officer Roberts and Defendant Officer John Doe.

59. Defendant Officer Roberts and Officer John Doe as government officials intentionally applied means to terminate Ms. Taylors' freedom of movement.

60. Defendant Officer Roberts and Defendant Officer John Doe are not entitled to qualified immunity for the complained of conduct.

61. As a proximate result of Defendant Officer Roberts and Defendant John Doe Officer's unlawful conduct, Ms. Taylor has suffered actual physical injuries, and other damages and losses as described herein entitling her to compensatory and special damages. As a further result of the Defendants' unlawful conduct, Ms. Taylor has incurred special damages, including medically related expenses and may continue to incur further medically and other special damages related expenses.

62. Ms. Taylor is therefore entitled to money damages pursuant to 42 U.S.C. § 1983 to compensate him for his injuries and for the violation of his constitutional and civil rights.

63. On information and belief, Ms. Taylor has suffered and may suffer lost future earnings and impaired earnings capacities from the not yet fully ascertained sequelae of her injury. Ms. Taylor is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

64. In addition to compensatory, economic, consequential and special damages, Ms. Taylor is entitled to punitive damages against Defendant Officer Roberts and Defendant Officer John Doe under 42 U.S.C. § 1983, in that the actions of each of these

individual Defendants were taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Ms. Taylor.

### Second Claim for Relief
### Bystander Liability – Failure to Intervene
### (Against Officer Doe)

65. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

66. Defendant Roberts' reckless use of force against Ms. Taylor was so excessive, violent and beyond the bounds of decency that it shocks the conscience. Defendant Officer Roberts intended to cause harm to Ms. Taylor, and his use of force was unrelated to any legitimate law enforcement objective or concern for his personal safety or the safety of others.

67. Defendant Officer John Doe who may have not been directly involved in the use of excessive force or the unconstitutional search and arrest of Ms. Taylor, but who observed the use of excessive force and the unconstitutional search and arrest, is liable as a bystander. Defendant Officer John Doe was aware that his fellow officer was using excessive force and arresting Ms. Taylor, in violation of Ms. Taylor's Fourth Amendment rights, had a reasonable opportunity to prevent the harm, and yet chose not to act.

68. Defendant Officer John Doe's acts, which were performed while acting under the color of District of Columbia

13

law, violated Ms. Taylor's rights. Defendant Officer John Doe is liable to Ms. Taylor under 42 U.S.C. § 1983.

69. As a direct result of Defendant Officer John Doe's failure to take any action in response to Defendant Officer Roberts's use of excessive force in violation of Ms. Taylor's Fourth Amendment right, Ms. Taylor has suffered extensive damages including, but not limited to, physical injuries, pain and suffering and medical expenses.

70. Defendant Officer John Doe acted knowingly, intentionally, maliciously and with deliberate and callous indifference to Ms. Taylor's personal safety and constitutional rights. Because of these failures to act, Ms. Taylor is entitled to an award of punitive damages against Defendant Officer John Doe.

### Third Claim for Relief
### Assault
### (Against Officer Roberts and Officer Doe)

71. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

72. Defendant Officer Roberts intentionally threatened Ms. Taylor with imminent bodily harm when he threatened her with pepper spray, pulled Ms. Taylor to the ground by her hair, violently twisted Ms. Taylor's arm, and then slammed his knee into her side.

73. Due notice under all applicable statutes has been given to the Defendants.

74. The actions of Defendant Officer Roberts are the direct cause of the injuries described above. Ms. Taylor is entitled to special damages which include pain and suffering, future pain and suffering and emotional trauma.

75. The intentional and malicious actions of Defendant Officer Roberts are the direct cause of Ms. Taylor's injuries described above. Ms. Taylor is entitled to punitive damages.

### Fourth Claim for Relief
### Battery
### (Against Officer Roberts and Officer Doe)

76. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

77. Defendant Officer Roberts engaged in a harmful and offensive contact of Ms. Taylor by pepper spraying her, pulling Ms. Taylor to the ground by her hair, violently twisting Ms. Taylor's arm, and then slamming his knee into her side, causing injury.

78. The actions of Defendant Officer Roberts are the direct cause of the injuries described above. Ms. Taylor is entitled to special damages which include pain and suffering, future pain and suffering and emotional trauma.

79. The intentional and malicious actions of Defendant Officer Roberts are the direct cause for the injuries described above. Ms. Taylor is entitled to punitive damages.

### Fifth Claim for Relief
### False Imprisonment/False Arrest
### (Against Officer Roberts and Officer Doe)

80. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

81. Defendant Officer Roberts did intentionally obstruct and detain Ms. Taylor, over Ms. Taylor's objections, when he charged at Ms. Taylor, pepper sprayed her, pulled Ms. Taylor to the ground by her hair, violently twisted Ms. Taylor's arm behind her back, dug his knee into Ms. Taylor's side, attempted to choke her, handcuffed her and transported Ms. Taylor to central booking.

82. Ms. Taylor had not committed any criminal acts.

83. Ms. Taylor reasonably believed that it would be dangerous for her to attempt to flee in light of the presence of Defendant Officer Roberts and his partner and the unnecessary and unjustified force employed by Defendant Officer Roberts.

84. Defendant Officer Roberts did not have probable cause to arrest Ms. Taylor and did not act with a reasonable belief that Plaintiff had violated the law.

85. Defendant Officer Roberts was not justified in unlawfully and forcefully arresting Ms. Taylor and depriving her of her freedom of movement.

86. Ms. Taylor did not consent to the aforementioned unlawful forceful arrest and detainment.

87. Defendant Officer Roberts' conduct vis-à-vis Ms. Taylor's, noted above, was both unlawful and unreasonable and in violation of all relevant regulations.

88. As a direct and proximate cause of Defendant Officer Roberts's actions, Plaintiff suffered physical injury and continues to suffer severe pain, mental anguish and distress.

89. As a direct and proximate cause of Defendant Officer Roberts's actions, Plaintiff was caused to incur economic damages, including but not limited to expenses for hospital and other medical care, as well as expenses for future medical care.

### Sixth Claim for Relief
### Intentional Infliction of Emotional Distress
### (Against Officer Roberts and Officer Doe)

90. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

91. The conduct of Defendant Roberts was intentional, malicious, wilful and reckless and in deliberate disregard of the high degree of probability that emotional distress would result to Ms. Taylor.

17

92. The conduct of Defendant Roberts was extreme and outrageous and beyond the bounds of decency in society.

93. The conduct of Defendant Roberts has caused and will continue to cause severe and extreme emotional distress to Ms. Taylor.

### RELIEF REQUESTED

WHEREFORE, the Plaintiff demands judgment against the defendants, as follows:

(1) Compensatory damages;

(2) Punitive damages;

(3) interest, costs, and attorney fees; and

(4) any further and additional relief as this court deems just and proper.

### JURY DEMAND

Plaintiff respectfully demands a jury trial in this matter.

Respectfully submitted,

/s/Randy E. McDonald

RANDY EVAN MCDONALD, Esq.
1001 L Street, SE
Washington, DC 20003
Telephone: (240)491-7609
randyemcdonald@gmail.com
D.C. Bar Number: 985693
Counsel for the Plaintiff