**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CHARMAIN TAYLOR** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 1:24-CV-01643 ABJ** |
| **TARIQUE ROBERTS, et al.** | |
| **Defendants.** | |

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
TARIQUE ROBERTS'

MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**DEFENDANT ROBERTS' MEMORANDUM IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT** ................................................................................. **1**

**I.   INDIVIDUAL AND OFFICIAL CAPACITY SUIT** ............................... **1**

**II.   FACTS** ................................................................................................... **3**

**III.   STANDARD OF REVIEW** ................................................................... **3**

**IV.   OFFICER ROBERTS IS ENTITLD TO QUALIFIED IMMUNITY FOR HIS ARREST OF PLAINTIFF AND HIS USE OF FORCE AGAINST HER** ......................... **5**

**V.   ROBERTS' PROBABLE CAUSE TO ARREST PLAINTIFF REQUIRES DISMISSAL OF UNREASONABLE SEIZURE UNDER 42 U.S.C. § 1983 (COUNT ONE), UNLAWFUL ARREST (COUNT FIVE) AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (COUNT VI)** ........................................................... **8**

  **A.   Standard Of Probable Cause** ........................................................ **8**

  **B.   The Uncontested Evidence Establishes That Defendants Had Probable Cause To Arrest Plaintiff As A Matter Of Law.** ............................................. **10**

  **C.   There Is No Clearly Established Law To Be Free From Arrest Under These Facts** ............................................................................................. **14**

  **D.   Plaintiff's Common Law False Arrest/Imprisonment Claim (Count VI) Must Be Dismissed Due To  Defendants' Probable Cause to Arrest.** .......................... **15**

    **1. This Court Should Exercise Supplemental Jurisdiction Over Common Law Claims** ........................................................................................... **15**

    **2. Probable Cause For Plaintiff's Arrest Requires Dismissal Of Plaintiff's Claim Of False Arrest** ............................................................................ **15**

  **E.   Intentional Infliction of Emotional Distress Must Be Dismissed Due To Probable Cause And Failure to Prove Prima Facie Case.** ................................... **17**

    **1. Probable Cause Defeats Plaintiff's IIED Claim** ............................... **17**

    **2. Plaintiff Fails To Make A *Prima Facie* Claim Of IIED** ...................... **18I**

**VI.   The Uncontroverted Video Evidence And Other Undisputed Facts Render Plaintiff's Allegations of Roberts' Use of Excessive Force A Visible Fiction Which Must Be Dismissed** ........................................................................ **21**

  **B.   Roberts Use of Pepper Spray Was Not Excessive** .......................... **22**

  **C.   Video Evidence Shows That Officer Roberts Did Not Pull Her To the Ground By Her Hair,  Choke Her, Violently Twist Her Arm, Or Slam His Knees Into Her Stomach And That His Use Of Force Was Reasonable** ...................... **23**

**D.    ROBERTS' ACTIONS WERE REASONABLY NECESSARY AND PRIVILEGED, REQUIRING DISMISSAL OF PLAINTIFF'S CLAIMS OF ASSAULT (COUNT THREE) AND BATTERY (COUNT IV).** ..................................... 27

**CONCLUSION** ....................................................................................................................... 29

## TALE OF AUTHORITIES

**Cases**

*Amobi v. D.C. Dep't of Corr.,* 755 F.3d 980 (D.C.Cir.2014) .................................... 18

*Anderson v. Creighton,* 483 U.S. 635 (1987) ............................................... 6, 14

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................... 3

*Armbruster v. Frost*, 962 F.Supp.2d 105 (D.D.C., 2013) .................................. 23

*Ashcroft v. al–Kidd,* 563 U.S. 731 (2011). .............................................. 5, 6, 7

*Beebe v. WMATA*, 129 F.3d 1283 (D.C. Cir. 1997) ....................................... 3

*Bradshaw v. District of Columbia,* 43 A.3d 318 (D.C. 2012) .............................. 15

*Brinegar v. U.S.,* 338 U.S. 160 (1949) .................................................... 8, 9

*Brosseau v. Haugen,* 543 U.S. 194 (2004) ................................................ 6, 14

*Burkhart v. WMATA*, 112 F.3d 1207 (D.C. Cir. 1997) .................................... 2

*Burney v. Suggs*, 630 F.Supp.3d 20 (2022) ............................................... 15

*Butera v. District of Columbia*, 235 F.3d 637 (D.C. Cir. 2001) ........................... 5

*Campbell v. District of Columbia*, 245 F.Supp. 3d 78 (D.D.C. 2017) .................. 6, 13

*Carroll v. United States*, 267 U.S. 132 (1925) ............................................ 8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................... 3

*City of Chicago v. Int'l Coll. Of Surgeons*, 522 U.S. 156 (1997) ......................... 15

*Cooke–Seals v. District of Columbia,* 973 F.Supp. 184 (D.D.C.1997) ................... 18

*Corrigan v. Glover,* 254 F.Supp.3d 184 (D.D.C 2017) .................................... 7

*Cromartie v. District of Columbia*, 479 F. App'x 355 (D.C. Cir. 2012) ............... 24, 25

*Cutchin v. District of Columbia*, 369 F.Supp.3d 108 (D.D.C., 2019) .................. 17, 25

*Dant v. WMATA*, 829 F.2d 69 (D.C. Cir. 1987) .......................................... 2

*Dellums v. Powell*, 566 F.2d 167 (D.C. Cir. 1977) ....................................... 16

*District of Columbia v. Chinn*, 839 A.2d at 706 (D.C. 2003) .......................... 27, 28

*District of Columbia v. Murphy,* 635 A.2d 929 (D.C.1993) ............................... 16

*District of Columbia v. Wesby*, 588 U. S. 48 (2018) ..................................... 9

*Dormu v. D.C.*, 795 F Supp. 2d 7 (D.D.C. 2011) ........................................ 20

*Enders v. District of Columbia*, 4 A.3d 457 (D.C. 2010) ................................. 16

*Futrell v. Dep't of Labor Fed. Credit Union,* 816 A.2d 793 (D.C.2003) .................. 18

*Garay v. Liriano,* 943 F. Supp. 2d 1 (D.D.C. 2013) ..................................... 21

*Gayden v. United States*, 107 A.3d 1101(D.C. 2014) .................................... 12

*Goolsby v. District of Columbia*, 317 F.Supp.3d 582 (D.D.C 2018) ...................... 25

*Graham v. Connor,* 490 U.S. 386 (1989) ......................................... 5, 6, 20, 21

*Greene v. Dalton*, 164 F.3d 671 (D.C. Cir. 1999) ........................................ 4

*Hafer v. Melo,* 502 U.S. 21 (1991) ....................................................... 2

*Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993) ..................................... 4

*Hargraves v. D.C.,* 134 F. Supp. 3d at  90 .......................................... 18, 19, 24

*Harlow v. Fitzgerald,* 457 U.S. 800 (1982) ............................................... 5

*Harris v. District of Columbia,* 696 F.Supp.2d 123 (D.D.C.2010) ........................ 19

*Henry v Cty of Flint, Mich.*, 814 F. App'x 973 (6th Cir. 2020) ......................... 22

*Homan v. Goyal*, 711 A.2d 812 (D.C. 1998) ............................................. 18

*Illinois v. Gates*, 462 U.S. 213 (U.S.Ill.,1983) ...................................... 8, 9, 10

*Jackson v. District of Columbia,* 412 A.2d 948 (D.C.1980) .............................. 19

*Johnson v. District of Columbia,* 528 F.3d 969 (D.C.Cir.2008) ........................... 7

*Johnson v. Glick*, 481 F.2d 1028 (2nd Cir. 1973) ....................................... 6

*Jonathan Woodner Co. v. Breeden,* 665 A.2d 929 (D.C.1995) .................................................. 18

*Jones v. District of Columbia, et al.*, 2024 WL 1328438 (CA 21-836 (RC)(March 28, 2024) 12,14

*Laningham v. U.S. Navy,* 813 F.2d 1236  (D.C. Cir. 1987) ........................................................... 3

*Larijani v. Georgetown Univ.*, 791 A.2d 41 (D.C. 2002) ........................................................... 18

*Lash v. Lemke,* 786 F.3d 1 (D.C. Cir. 2015) ........................................... 4, 12, 13, 14, 22, 26, 27

*Martin v. Malhoyt*, 830 F.2d 237 (D.C. Cir. 1987) ................................................................... 24

*McGovern v. George Washington University*, 245 F. Supp. 3d 167 (D.D.C. 2017) ............. 10, 13

*Oberwetter v. Hilliard*, 639 F.3d 545 (D.C. Cir. 2011) ............................................................ 25

*Paul v. Howard University*, 754 A.2d 297 (D.C., 2000) ........................................................... 19

*Pearson v. Callahan,* 555 U.S. 223 (2009).................................................................................. 5

*Powell v. United States,* 238 A.3d 954 (D.C. 2020) .............................................................. 12,14

*Reichle v. Howards*, 566 U.S. 658 (2012) ............................................................................. 5. 7

*Rice v. District of Columbia,* 774 F.Supp.2d 18 (D.D.C.2011) ................................................ 16

*Robinson v. District of Columbia*, 2006 WL 2714913 .............................................................. 24

*Rogala v. D.C.,* 161 F. 3d 44 (D.C. Cir. 1998) .......................................................... 6, 20, 24, 28

*Saucier v. Katz,* 533 U.S 194 (2001) .................................................................................... 6, 14

*Scott v. District of Columbia*, 101 F.3d, 748 (D.C Cir. 1996) .................................................. 24

*Scott v. Harris,* 550 U.S. 372 (2007) ......................................................................................... 4

*Sere v. Group Hospitalization, Inc.,* 443 A.2d 33(D.C.1982) .................................................. 19

*Smith v. United States,* 843 F.3d 509 (D.C. Cir. 2016)............................................................ 17

*Stevens v. Stover,* 727 F.Supp. 668 (D.D.C.1990) .................................................................. 19

*Tennessee v. Garner*, 471 U.S. 1 (1985)..................................................................................... 6

*Texas v. Brown,* 460 U.S. 730 (1983)......................................................................................... 9

*Virginia v. Moore,* 553 U.S 164 (200*).................................................................................. 10, 13

*Wardlaw v Pickett*, 1 F.3d 1297 (D.C. Cir. 1993) .................................................................... 20

*Wasserman v. Rodacker*, 557 F.3d 635 (D.C. Cir. 2009) ........................................................ 25

*White v. Pauly* 500 U.S.73 (2017) .............................................................................................. 5

*Whittaker v. Munoz*, 2019 WL 4194499, (D.D.C., 2019)......................................................... 10

*Wilkins v. District of Columbia, et al*., 2020 WL 581691 ....................................................... 22

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CHARMAIN TAYLOR          :
                                   :

    Plaintiff,               :
                                   :

    v.                     :
                                   :    **CASE NO.: 1:24-cv-01643 ABJ**

TARIQUE ROBERTS, et al.      :
                                   :

    Defendants.            :

_____

## DEFENDANT ROBERTS' MEMORANDUM IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

    Officer Tarique Roberts, by and through counsel, hereby submits this Memorandum of Law in Support of His Motion For Summary Judgment on all claims asserted against him by Plaintiff.

## I.    INDIVIDUAL AND OFFICIAL CAPACITY SUIT

    On April 14. 2024, Plaintiff filed a five-count Complaint against Defendant Roberts in the Superior Court of the District of Columbia. Complaint, ECF # 1-4. Defendant Tarique Roberts ("Roberts") is a police officer employed by Washington Metropolitan Area Transit Authority's ("WMATA's") Metro Transit Police Department ("MTPD"), where he has been employed for 18 years.[1]  SMF ¶¶ 1-2. Roberts removed the case to the United States District

---

[1] Count Two of Plaintiff's Complaint specifically alleges a §1983 claim against an unnamed and unserved MTPD officer ("John Doe") under a theory of failing to intervene as to Officer Robert's alleged use of excessive force against Plaintiff. (Count Two-Failure to Intervene)  That claim must be dismissed along with Plaintiff's claims against Roberts because:  1) Procedurally, Plaintiff has failed to serve Officer Doe in the three months since the case has been filed; and where Plaintiff's counsel has had a copy of the BWC video since August 1, 2024, which shows Defendant Doe wearing his uniform with a name tag; 2) Where Officer Roberts is entitled to qualified immunity against Plaintiff's claims of constitutional torts, Officer Doe must also enjoy to the same protection; the video shows he did not engage in any acts other than help put handcuffs on Plaintiff and was no physically close to most interactions when they occurred; 3) Counts One, Three, Four, Five and Six name Officer Doe along with Officer Roberts, but Plaintiff fails to allege a single wrongful act in any of those counts allegedly committed by Officer Doe.

Court for the District of Columbia on June 5, 2024. *See* Notice of Removal, ECF # 1. All of Plaintiff's claims arise out of an incident on August 23, 2023, at WMATA's Congress Heights Metrorail station, ending in Roberts arresting Plaintiff for assault on a police officer and resisting arrest. *See* Complaint, ECF #1- 4; SMF ¶¶ 9-33; 59.

Plaintiff alleges five counts against Officer Roberts. Count One alleges Officer Roberts violated Plaintiff's Fourth Amendment rights under 42 U.S.C. § 1983 by allegedly using excessive force against Plaintiff and seizing her without probable cause in violation of the Fourth Amendment. Counts Three and Four allege that Officer Roberts committed common law assault and battery against Plaintiff during the course of her arrest. In Count Five, Plaintiff asserts common law false imprisonment/false arrest. Finally, Count Six asserts a claim of intentional infliction of emotional distress under District of Columbia common law.

Although her Complaint alleges that she is suing Roberts in his official as well as personal capacity. Plaintiff, as a matter of law, may not assert a claim against Officer Roberts in his official capacity.  An official capacity suit in simply another way of alleging a claim against WMATA. The Supreme Court has held that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo,* 502 U.S. 21, 25 (1991) (internal quotation marks omitted). Consequently, when an official is named as a defendant based upon the position held, "the real party in interest ... is the governmental entity and not the named official." *Id.* Plaintiffs' claims against Officer Roberts in his official capacity, therefore, must be analyzed as if WMATA were the party-defendant.

This Circuit has long recognized WMATA's immunity from all claims arising from its police functions, which are "quintessential governmental functions." *Dant v. WMATA*, 829 F.2d 69, 74 (D.C. Cir. 1987); *see also Burkhart v. WMATA*, 112 F.3d 1207, 1216 (D.C. Cir. 1997);

*Beebe v. WMATA*, 129 F.3d 1283, 1287 (D.C. Cir. 1997). This Court lacks subject matter jurisdiction over an official capacity suit brought against Officer Roberts, because WMATA enjoys absolute immunity for its police function. *Id.* All of Plaintiff's claims herein pertain to police function, for which WMATA is immune. *Id*. For these reasons, all official capacity claims must be dismissed and Officer Roberts submits his arguments herein addressing Plaintiff's claim against him in his personal capacity.

## II.    FACTS

*See* Defendant's Statement of Material Facts Not in Dispute ("SMF"), attached hereto as Exhibit 1 and incorporated herein.

## III.    STANDARD OF REVIEW

Summary judgment is appropriate whenever the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. Once the moving party makes the initial showing that no issue exists as to any material fact, the burden shifts to the opposing party to demonstrate the existence of a material factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Plaintiff, as the non-moving party, is required to provide evidence that would permit a reasonable jury to find in his favor. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987). In ruling upon a summary judgment motion, all reasonable inferences that may be drawn from the facts in the record must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The inferences, however, must be reasonable, and the non-moving party can only defeat a motion for summary judgment by responding with some factual showing that creates a genuine

3

issue of material fact. *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Mere conclusory allegations are insufficient to raise a genuine issue of material fact. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

The obligation of a court to view the facts in the light most favorable to the nonmoving party on motion for summary judgment is only applicable when, and if, there is a *genuine* dispute of facts. *Scott v. Harris,* 550 U.S. 372, 380 (2007)(internal citations omitted)(emphasis added). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* The Supreme Court rejected the non-movant/suspect's version of the facts in *Scott v. Harris*, who claimed that he was not a threat while fleeing from the police in his car. *Id*. at 379. The Supreme Court noted that the "videotape [told] quite a different story" from the story told by the suspect. *Id*. The video showed the non-movant in his car "racing down narrow, two-laned roads in the dead of night at speeds that are shockingly fast;" his car could be seen to 'swerve around more than a dozen cars" and force other drivers onto the shoulders of the road to avoid collisions. *Id.*

The D.C. Circuit was confronted with video evidence in *Lash v. Lemke,* 786 F.3d 1, 6 (D.C. Cir. 2015) that differed from what the non-movant alleged. The Circuit Court viewed the facts in the *light established by the video evidence*, rejecting the non-movant's version of the facts, and affirmed the grant of summary judgment in favor of several U.S. Park Police ("USPP") officers. *Lash v. Lemke*, 786 F.3d 1, 6 (D.C. Cir. 2015). Lash, the non-movant had alleged that the USPP officers unlawfully "tased" him while he was part of the Occupy D.C. encampment at McPherson Square in 2012. *Id.* at 3-4. After viewing the video evidence, the D.C. Circuit rejected Lash's affidavit in which he declared that he did not resist arrest. *Id.* at 6. "…[W]hen a

nonmovant's account of the facts is "utterly discredited" by the unmistakable evidence provided by a video recording, the Court has instructed us not to rely on a 'visible fiction' but rather 'view [ ] the facts in the light depicted by the video record."  *Id*. at 6 (internal citations omitted). Whatever allegations plaintiff asserted, the D.C. Circuit "know[s] to a certainty that he resisted arrest because we can see him doing so."  *Id*. at 7.

## IV.    OFFICER ROBERTS IS ENTITLD TO QUALIFIED IMMUNITY FOR HIS ARREST OF PLAINTIFF AND HIS USE OF FORCE AGAINST HER

The doctrine of qualified immunity shield state actors, including police officers, who allegedly violate a plaintiff's constitutional rights. *Butera v. District of Columbia*, 235 F.3d 637, 645 (D.C. Cir. 2001). "Qualified immunity shields federal and state officials from suit unless a plaintiff alleges facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al–Kidd,* 563 U.S. 731, 735 (2011) (*quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). For a right to be "clearly established," the law must be sufficiently clear that every reasonable police officer would understand their actions were unlawful. *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). A district court has the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

The "clearly established law" prong of the qualified immunity analysis requires that there be a prior case with a defendant officer acting under similar circumstances, where the officer was held to have violated the Fourth Amendment. *White v. Pauly* 500 U.S.73, 79 (2017). The prior case must render the unlawfulness of an officer's actions apparent. *Id*. (internal citations omitted). The standard  of "clearly established" is not met, when courts rely on cases that simply describe general statement of law, such as *Tennessee v. Garner*, 471 U.S. 1 (1985) or *Graham v.

*Connor*. 490, U.S. 386 (1989), "which are inherently incapable of giving fair warning." *Id.* (internal citations omitted).

Qualified immunity allows law enforcement officers 'breathing room to make reasonable but mistaken judgments about open legal questions." *Al-Kidd. at* 743. It protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal citations omitted). In an excessive force claim, an officer will be held liable only "if the force used was so excessive that no reasonable officer could have believed in the lawfulness of his actions." *Rogala v. District of Columbia* 161 F.3d 44 (D.C. Cir. 1998). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" is actionable under the Fourth Amendment. *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973).

Once a defendant raises the defense of qualified immunity, the burden of proof falls to the plaintiff to show that the officer is not entitled to the defense. *Campbell v. District of Columbia*, 245 F.Supp. 3d 78, 85 (D.D.C. 2017). Summary judgment based upon qualified immunity is appropriate if the established law failed to put the officer on notice that his actions would be clearly unlawful. *Saucier v. Katz,* 533 U.S. 194, 202 (2001). The doctrine operates to protect a police officer when the officer "makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen,* 543 U.S. 194, 198, (2004) (*per curiam*) (*citing Saucier,* 533 U.S. at 206).

Whether qualified immunity applies "generally turns on the objective legal reasonableness of an officer's actions, assessed in light of the legal rules that were clearly established at the time." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). "[W]hile an officer's subjective state of mind is not relevant to the qualified immunity inquiry, the officer's

perceptions of the objective facts animating the challenged conduct are." *Corrigan v. Glover,* 254 F.Supp.3d 184 (D.D.C 2017) (internal citations omitted).

To prevail on a claim of excessive force and/or unlawful arrest in violation of 42 U.S.C. § 1983 and successfully challenge Defendant's defense of qualified immunity, Plaintiff must establish that, at the time of the challenged conduct, she was denied a clearly established constitutional right under color of law. *Reichle v. Howard,* 566 U.S. at 664. A right must be sufficiently clear 'that every reasonable officer would [have understood] that what he is doing violates that right.'" *Id.* (citation omitted).

This court may choose to bypass the first prong of inquiry of whether Plaintiff has shown Roberts committed a constitutional violation by either arresting her without probable cause or, using force that, under the totality of circumstances, was unreasonable and therefore, excessive; or, this court may start with the second prong and determine where the law was clearly established so that Roberts and every reasonable officer would have understood that Roberts' actions violated Plaintiff's rights.  Should it start with the second prong, this Court would be guided foremost by case law of the Supreme Court of the United States. The D.C. Circuit has held that the answer to the question of whether a right was 'clearly established,' is controlled by the following hierarchy of case law: "we look to cases from the Supreme Court and this court, as well as to cases from other courts exhibiting a consensus view."  *Johnson v. District of Columbia,* 528 F.3d 969, 976 (D.C.Cir.2008). While the Supreme Court has not required that a case be directly 'on point' for a right to be clearly established, existing case law must have placed the constitutional question beyond debate. *Ashcroft v. al–Kidd,* 563 U.S. at 741.

Roberts will address both inquiries necessary for the determination of qualified immunity, beginning with the first prong. Roberts did not violate Plaintiff's Fourth Amendment rights when

he arrested he, because the uncontroverted video evidence and law of this jurisdiction establish that he had probable cause to do so; Roberts did not use excessive force in arresting Plaintiff, only force that was objectively reasonable under established case law. For these reasons, Defendant is entitled to qualified immunity. Further, the existence of probable cause to arrest Plaintiff requires dismissal of unlawful seizure under § 1983 (Count One); unlawful arrest (Count Five) and intentional infliction of emotional distress (Count VI). Defendant's objectively reasonable use of force during the arrest entitles Defendant to qualified immunity; not only does it require dismissal of Plaintiff's claims of excessive force under § 1983, but of her assault and battery in Counts Three and Four.

Even assuming *arguendo* that Roberts was wrong about possessing probable cause to arrest Plaintiff and that his force was objectively reasonable, he is still entitled to qualified immunity because there is no clearly established law that would have provided him notice that his actions were unlawful.

V.    **ROBERTS' PROBABLE CAUSE TO ARREST PLAINTIFF REQUIRES DISMISSAL OF UNREASONABLE SEIZURE UNDER 42 U.S.C. § 1983 (COUNT ONE), UNLAWFUL ARREST (COUNT FIVE) AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (COUNT VI)**

A.  **Standard Of Probable Cause**

Probable cause exists where officers have knowledge of facts and circumstances which are reasonably trustworthy and "sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. *Brinegar v. U.S.,* 338 U.S. 160, 175–76 (1949); *quoting Carroll v. United States*, 267 U.S. 132, 162 (1925). As explained in *Illinois v. Gates*, "probable cause is a fluid concept—turning on the assessment of probabilities

in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (U.S.Ill.,1983).

"The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." *Brinegar,* 338 U.S. at 175 (internal quotation marks and citation omitted. "It is clear that only the probability, and not prima facie showing, of criminal activity is the standard of probable cause." *Gates,* 462 U.S. at 235 (internal quotation marks and citation omitted). Nor does probable cause "demand any showing that [the arresting officer's belief in a suspect's guilt] be correct or more likely true than false." *Texas v. Brown,* 460 U.S. 730, 742 (1983) (plurality opinion); *accord Ball v. United States,* 803 A.2d 971, 974 (D.C. 2002).

In *District of Columbia v. Wesby*, 588 U. S. 48, 56-62 (2018) the Supreme Court overturned the D.C. Circuit's decision that no probable cause existed when District of Columbia's MPD officers arrested multiple suspects for trespassing. *Id*. The Circuit failed to consider the "totality of the circumstances" known to the arresting officers. *Id.* The Supreme Court held that facts known to the officers must not be viewed in isolation, because "[o]ur precedents recognize that the whole is often greater than the sum of its parts—especially when the parts are viewed in isolation." *Id.* at 588 (internal citations omitted). A court must examine the facts from the standpoint of an objectively reasonable officer. *Id.* When determining whether probable existed, the Court noted that the legal standard for probable cause is not "a high bar." *Id*. (internal citations omitted). Under the totality of the circumstances known to Roberts, proven by the video evidence as well his background, training, and experience, require a finding that probable cause existed for Plaintiff's arrest.

**B. The Uncontested Evidence Establishes That Defendants Had Probable Cause To Arrest Plaintiff As A Matter Of Law.**

On August 23, 2023, Officer Roberts arrested Plaintiff for assault on a police officer ("APO") under D.C. Code § 22-405(b) (2016), as well as for resisting arrest, under D.C. Code § 22-405.01 (2018).[2] *See* Roberts Statement of Material Facts Not In Dispute ("SMF"), Exhibit 1 ¶ 59. "To determine whether [an officer] had probable cause to believe that [a plaintiff was] violating District of Columbia law, we look to District law to identify the elements of each of those offenses." *McGovern v. George Washington University*, 245 F. Supp. 3d 167 (D.D.C. 2017)(citation and internal quotation marks omitted).

The relevant portion of the APO statute states that, "Whoever without justifiable and excusable cause assaults a law enforcement officer on account of, or while that law enforcement officer is engaged in the performance of his or her official duties shall be guilty of a misdemeanor [...]." DC Code § 22-406(b) (2016). Assault is a general intent statute where "the requisite intent required to violate the statute is the general intent to commit the act that constitutes the crime, not intent to violate the law itself." *Whittaker v. Munoz*, 2019 WL 4194499, at *4 (D.D.C., 2019)(internal citations omitted).

When Officer Roberts arrested Plaintiff on August 23, 2023, for the crimes of APO and resisting arrest, he had probable cause to arrest for her for both misdemeanors, placing his arrest of Plaintiff within the constitutional bounds of the Fourth Amendment. "The Fourth Amendment

---

[2] "Whoever without justifiable and excusable cause intentionally resists an arrest by an individual who he or she has reason to believe is a law enforcement officer or prevents that individual from making or attempting to make an arrest of or detain another person shall be guilty of a misdemeanor [. . .]. DC Code § 22-405.01.

protects against unreasonable searches and seizures ….” *Virginia v. Moore,* 553 U.S. 164, 168 (2008). An arrest is lawful and constitutional if it is “based on probable cause.” *Id.* at 173.

There are two sets of facts that establish Roberts’ probable cause for arresting Plaintiff under the District of Columbia’s APO statute. The first set of facts arises of Plaintiff’s confrontation with Roberts while trying to get her son onto the paid side of the station without possessing a SmarTrip card. *See* SMF ¶¶ 7-33. Plaintiff was angry that Officer Roberts did not immediately let her child into the Metrorail system – even though he told her within the space of several seconds that he would let her son through -- when her son did not have a student SmarTrip card. *Id.* Plaintiff balled up her fists, approached him aggressively, within arms’ reach of his face, and yelled loudly and angrily at him. SMF ¶¶ 22-28. After her son passed through the gates on a SmarTrip given to him by a stranger, before Officer Roberts let him through, Plaintiff walked from the faregate directly into Officer Roberts, who was standing a few feet away. SMF ¶¶ 30-33.

The second set of facts that provide Officer Roberts’ probable cause for arresting Plaintiff for APO start at this point, where Plaintiff walked directly into Roberts. *Id.* As Plaintiff walked away from the faregates behind her, Plaintiff physically contacted Officer Roberts with her arm. *Id*. Plaintiff’s right arm made contact to Defendant’s chest area; Plaintiff even extended her right elbow out from her body as she passed. *Id*. Officer Roberts did not consent to her physically contacting him; he found her actions offensive. SMF ¶ 32.

Based on the two sets of facts describing Plaintiff’s conduct, Officer Roberts reasonably believed he had probable cause to arrest Plaintiff for assault on a police officer where Plaintiff: (1) balled up her fists close to him, while leaning in aggressively close to his person and yelling at him while standing near him; and (2) her physical contact with him. SMF ¶¶ 23-33. Officer

Roberts, based on the totality of the circumstances and his training, reasonably believed that he had probable cause to believe Plaintiff had committed the crime of assault on a police officer. SMF ¶¶ 34-35.

Cases in this jurisdiction support Roberts' reasonable belief that the two sets of facts, each independently, or the two together (Roberts did not arrest her until the conclusion of the second set of facts) gave him probable cause to arrest Plaintiff for APO. If a suspect is aggressive and threatening enough, there can be sufficient facts to sustain probable cause for an "intent-to-frighten" APO and/or intent-to-frighten simple assault, even without physical touching. *See Jones v. District of Columbia, et al*., 2024 WL 1328438 (CA 21-836 (RC)(March 28, 2024); *Powell v. United States,* 238 A.3d 954, 958 (D.C. 2020). Here, Roberts had evidence of more than an "intent-to frighten" assault; he also relied on his evidence of the physical contact that Plaintiff made against his person. SMF ¶¶ 23-35.

Roberts had probable cause to arrest Plaintiff for resisting arrest as well. The relevant part of the resisting arrest statute states that, "Whoever without justifiable and excusable cause intentionally resists an arrest by an individual who he or she has reason to believe is a law enforcement officer . . . shall be guilty of a misdemeanor [. . .]."  DC Code § 22-405.01. If conduct goes beyond "speech and mere passive resistance or avoidance, and cross[es] the line into active confrontation, obstruction or other action directed against an officer's performance in the line of duty by actively interposing some obstacle that precluded the officer from questioning him or attempting to arrest him,"  the conduct constitutes resisting arrest. *Gayden v. United States*, 107 A.3d 1101, 1104–05 (D.C. 2014).

The courts of this district have discussed on many occasions the circumstances and facts that rise to the level of probable cause for resisting arrest. For example, in *Lash v. Lemke*, the

D.C. Circuit explained that it could determine that the plaintiff resisted arrest because, "there is no genuine dispute regarding Lash's conduct. Multiple video recordings of the episode make perfectly clear that Lash resisted the officers' efforts to arrest him. He pulled his arms free from the officers' efforts to restrain them twice in succession." *Lash v. Lemke*, 785 F.3d at 6.

In *Campbell v. District of Columbia*, 245 F.Supp.3d 78 (D.D.C. 2017), the court similarly relied on surveillance video to decide whether probable cause existed for an officer to arrest a subject for resisting arrest. The arresting officer is seen in the video facing the suspect, and then grabbing the suspect's right arm to hold him in place for an investigatory stop. *Id*. at 88. The suspect "immediately proceeded to jerk towards the open doorway while forcefully pushing Officer Newton's hands away." *Id*. Another officer helped, and both attempted to have the suspect lean over onto a structure of the store, but the suspect continued to resist by using his hands to push the officers away. *Id.* The *Campbell* court held that the suspect's actions gave the officer probable cause to arrest for resisting arrest. *Id.*

Plaintiff's actions in the instant matter, caught video, unequivocally show that Plaintiff resisted arrested; moreover, she *admits* that she resisted arrest. SMF ¶¶ 51, 52-72. Plaintiff's active confrontation and obstruction of Officer Roberts' attempts to arrest her, caught on station video, provided Officer Roberts with probable cause for her arrest for resisting arrest. The existence of this probable cause requires dismissal of Plaintiff' § 1983 claim of unlawful seizure.

"To succeed on a claim … under 42 U.S.C. § 1983, a plaintiff must show that the defendant, while acting under color of law, deprived him of the rights, privileges, or immunities secured by the Constitution and laws of the United States." *McGovern v. George Washington University,* 245 F. Supp. 3d 167, 176 (D.D.C. 2017). Under the Fourth Amendment, an arrest is lawful and constitutional if it is "based on probable cause." *Virginia v. Moore,* 553 U.S. at 173.

Uncontroverted video evidence proves, as a matter of law, that Officer Roberts had objective probable cause to arrest Plaintiff. The evidence in this matter, video and otherwise, demonstrates that probable cause existed for Defendant's arrest of Plaintiff. Even *if*, however, the Officer Roberts was mistaken in his belief that he had probable cause to arrest Plaintiff, he would nonetheless possess qualified immunity for any alleged Fourth amendment violation related to the arrest. *See* Section VI, *infra.*

Accordingly, Defendant Roberts' probable cause to arrest Plaintiff for both charges of assault on a police officer *and* resisting arrest require the dismissal of Plaintiff's claim of unreasonable seizure under 42 U.S.C. § 1983.

### C. **There Is No Clearly Established Law To Be Free From Arrest Under These Facts**

Roberts will be shielded by qualified immunity in his arrest of Plaintiff, if a reasonable officer, armed with the information that Officer Roberts possessed, could have believed Plaintiff's arrest lawful. *Anderson v. Creighton,* 483 U.S. at 641. *Even if* Defendant Roberts mistakenly, but reasonably, concluded probable cause was present, he is still entitled to qualified immunity.

Summary judgment based upon qualified immunity is appropriate if the established law failed to put the officer on notice that his actions would be clearly unlawful. *Saucier v. Katz,* 533 U.S. at 202. Qualified immunity protects an officer even when the officer mistakenly violates a constitutional standard due to reasonable misunderstanding of the law governing the officer's circumstances. *See Brosseau v. Haugen,* 543 U.S. at 198 .

The prior cases of *Jones v. District of Columbia, Powell v. United States, Lash v. Lemke* would not have made clear to a reasonable officer that no probable cause existed in the facts known to Officer Roberts and that his actions were unlawful. For these additional reasons,

14

Roberts is entitled to qualified immunity and Plaintiff's claims of unlawful seizure in Count One must be dismissed.

### D.  Plaintiff's Common Law False Arrest/Imprisonment Claim (Count VI) Must Be Dismissed Due To  Defendants' Probable Cause to Arrest.

1.  <u>This Court Should Exercise Supplemental Jurisdiction Over Common Law Claims</u>.

Plaintiff's common law claims arise out of the same incident as his federal claims because both types of claims are based on assertions that  Defendants lacked probable cause to arrest him and that Defendants used force against him that was excessive when he was arrested by Defendants on August 23, 2023 at the Congress Heights Metrorail station.   Because Plaintiff's federal and common law claims both arise from a less than a 7-minute period at the Metrorail station that day, the claims form one constitutional case. *See City of Chicago v. Int'l Coll. Of Surgeons*, 522 U.S. 156, 164-65 (1997). The three remaining common law claims raise no novel or complex issues of state law; in fact, the standards for the common law claims are similar to the those of the federal law claims. Principles of judicial economy and fairness strongly favor this Court exercising supplemental jurisdiction over the common law counts of false arrest, assault and battery, and intentional infliction of emotional distress. *See Burney v. Suggs*, 630 F.Supp.3d 20, 35 (2022).

2.  <u>Probable Cause For Plaintiff's Arrest Requires Dismissal Of Plaintiff's Claim Of False Arrest</u>

Under District of Columbia common law, the tort of false arrest, and the tort of false imprisonment are based upon an unlawful detention. *See, e.g., Bradshaw v. District of Columbia,* 43 A.3d 318, 322, n.7 (D.C. 2012) (internal citations omitted). The similarity does not

end there; the analysis used for false arrest and false imprisonment is "practically identical." *Rice v. District of Columbia,* 774 F.Supp.2d 18, 21 (D.D.C.2011).

"[T]he relevant inquiry in a false arrest defense is not what the actual facts may be but rather what the officers could reasonably conclude from what they were told and what they saw on the scene." *Enders v. District of Columbia*, 4 A.3d 457, 470-71 (D.C. 2010). "The focal point of the [tort of false arrest] is the question whether the arresting officer was justified in ordering the arrest of the plaintiff; if so, the conduct of the arresting officer is privileged, and the action fails." *Dellums v. Powell*, 566 F.2d 167, 175, (D.C. Cir. 1977).

An officer can prove probable cause by either showing the arrest meets the objective standard for probable cause or by a partially subjective test. *District of Columbia v. Murphy,* 635 A.2d 929, 932 (D.C.1993). Under the objective probable cause test, if a police officer meets the constitutional standard of probable cause to arrest, which is the same objective standard used to determine probable cause in a criminal proceeding, then the arrest is lawful, and the officer has a complete defense to any false arrest claim *Id.* at 931–32. The probable cause test is based entirely on the objective facts. *Id.*

The partially subjective test for probable cause also provides a police officer's defense to a false arrest claim. *Id.* Under this test, "it will suffice if the officer can demonstrate that (1) he or she believed, in good faith,. at his [or her] conduct was lawful, and (2) this belief was reasonable." *Id.*

Officer Roberts not only had constitutional probable cause to arrest Plaintiff (s*ee* Section V.A and V.B, *supra*), but he also had a good faith, reasonable, belief that his actions were lawful. *See* SMF ¶¶ 72,73.  Officer Roberts believed that he had probable cause, under the totality of the circumstances, and based upon his 18 years of experience policing, to arrest Plaintiff for assault

16

on a police officer and for resisting arrest, and any other reasonable officer confronted with the same facts and knowledge would believe that believe that probable cause to arrest for assault for a police officer existed, as well as for resisting arrest.  *Id.* Plaintiff's claim of false arrest and imprisonment based upon lack of probable cause must fail and judgment granted in favor of Defendant Roberts.

**E.  Intentional Infliction of Emotional Distress Must Be Dismissed Due To Probable Cause And Failure to Prove Prima Facie Case.**

1.  <u>Probable Cause Defeats Plaintiff's IIED Claim</u>

As a matter of law, the existence of probable cause precludes Plaintiff from asserting a claim for intentional infliction of emotional distress ("IIED") based upon her arrest. *Cutchin v. District of Columbia*, 369 F.Supp.3d 108, 128 (D.D.C., 2019). Probable cause existed to arrest Plaintiff, so "the arrest itself cannot form the basis for a claim of extreme or outrageous conduct." *Id.* (quoting *Kotsch v. District of Columbia*, 924 A.2d 1040, 1046 (D.C. 2007)). In *Smith v. United States*, 843 F.3d 509, 513 (D.C. Cir. 2016), the D.C. Circuit held that "[t]he existence of probable cause foreclosed not only [the plaintiff's] false arrest, malicious prosecution and Fourth Amendment claims, but also his claim of intentional infliction of emotional distress based on his arrest." *Id*.

Officer Roberts had probable cause to arrest Plaintiff and used a reasonable amount of force in effecting Plaintiff's arrest. Plaintiff's resisted arrest from the time Officer Roberts announced that she was under arrest until she was finally handcuffed more than 5 minutes later. *See* SMF ¶¶ 51-75. Her resisting arrest was the causal reason for all uses of force that occurred after her being pepper-sprayed. *Id.*

17

Plaintiff's arrest, supported by probable cause, cannot as a matter of law, be extreme nor outrageous which precludes a finding in favor of Plaintiff's IIED claim, and judgment must be granted in Defendant Roberts' favor.

2.  Plaintiff Fails To Make A *Prima Facie* Claim Of IIED

Plaintiff's claim of IIED is foreclosed by the probable cause the officers had to arrest Plaintiff for fare evasion and resisting arrest, but it is also fails on the merits, due to the lack of evidence to meet the exceedingly high standards required of the claim.

To establish a *prima facie* case of IIED, a plaintiff must show: (1) extreme and outrageous conduct of the part of the defendant, which (2) either intentionally or recklessly (3) causes the plaintiff severe emotional distress. *Amobi v. D.C. Dep't of Corr.,* 755 F.3d 980, 995 (D.C.Cir.2014) (*quoting Futrell v. Dep't of Labor Fed. Credit Union,* 816 A.2d 793, 808 (D.C.2003)); *see also Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C. 2002)); *Cooke–Seals v. District of Columbia,* 973 F.Supp. 184, 188 (D.D.C.1997) (citing *Jonathan Woodner Co. v. Breeden,* 665 A.2d 929, 935 (D.C.1995))

"Liability will be imposed only for conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998) (internal quotation marks and citations omitted).

In *Hargraves v. District of Columbia*, 134 F.Supp.3d 68, 93–94 (D.D.C., 2015), the court rejected a plaintiff's claim of IIED against officers who used force "during a volatile struggle on a public sidewalk with a suspect whom the officers had reason to believe was in flight, was non-compliant with commands, and had been using marijuana.' *Id*. Instead, the *Hargraves* court held

18

that the use of force fell within the "realm of conduct that courts have found to not rise to the level of extreme and outrageous." *Id.* For example, in *Harris v. District of Columbia,* 696 F.Supp.2d 123, 137 (D.D.C.2010), the court found no extreme or outrageous conduct occurred where the plaintiff alleged that he was arrested without a warrant, and that 12 officers used excessive force when they performed the search with their guns drawn. *Id.* In *Stevens v. Stover,* 727 F.Supp. 668, 672–73 (D.D.C.1990) the plaintiff's claim of IIED could not lie where it was based upon an officer's use of force which the court had found to be reasonable. *Id.*

In *Paul v. Howard University*, 754 A.2d 297, 307 (D.C., 2000), the plaintiff alleged that she "suffered from heightened levels of stress, high blood pressure, and disrupted sleep as a result of appellees' allegedly outrageous conduct;" however, the court dismissed plaintiff's claim for failing to meet the difficult standards of this claim. *Paul,* 754 A.2d at 307. *See Sere v. Group Hospitalization, Inc.,* 443 A.2d 33, 37 (D.C.1982), *cert. denied,* 459 U.S. 912, 103 S. Ct. 221, 74 L.Ed.2d 176 (1982) ("the defendants' actions must proximately cause the plaintiff emotional upset 'of so acute a nature that harmful physical consequences [are likely] ... to result' "). The claim must demonstrate conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Jackson v. District of Columbia,* 412 A.2d 948, 957 (D.C.1980) (citation omitted).

Plaintiff's asserted allegations of harm fail here for the same reasons the plaintiffs' claims in *Hargraves* and *Paul* failed. Plaintiff presents no evidence that Defendants' conduct was so extreme and outrageous to go outside all bounds of decency; nor did she suffer an emotional upset of such an acute nature that harmful consequences are the likely result. Plaintiff simply asserts boilerplate language, that as a result of her arrest, she "suffered severe and extreme emotional distress." Complaint at Count Six ¶ 93, ECF #1-4. These allegations do not "meet the

difficult standards of this claim." Nor is there evidence that the Defendants' actions were intentionally or recklessly undertaken to meet the elements of this claim.

"Moreover, merely suffering from mental anguish and stress is insufficient to meet the third element, which instead requires "the level of severe emotional distress," which is "so acute ... that harmful physical consequences [are likely] to result." *Hargraves v. District of Columbia*, 134 F.Supp.3d at 93–94 (internal citations omitted). Plaintiff has failed to establish a *prima facie* case of IIED; therefore, judgment must be granted in favor of Defendants as a matter of law.

## VI.    DEFENDANT'S OBJECTIVELY REASONABLE USE OF FORCE REQUIRES DISMISSAL OF PLAINTIFF'S CLAIM OF EXCESSIVE FORCE UNDER § 1983.

Claims based on a police officer's use of "excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of [one's] person" are "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. at 388. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. A court must consider such factors as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

It is well-settled that "an officer has the authority to use some degree of physical coercion or threat thereof during the course of an arrest, and not every push or shove, even if it may later seem unnecessary … violated the Fourth Amendment." *Dormu v. D.C.*, 795 F Supp. 2d 7, 21-22 (D.D.C. 2011) (*citing Rogala v. D.C.,* 161 F. 3d at 55 (quoting *Graham,* 490 U.S. at 395-97)). "In determining whether an officer's use of force was reasonable … [t]he severity of the injury the plaintiff suffered is also relevant." *Id.* (citing *Wardlaw v Pickett,* 1 F.3d 1297, 1304 n. 7 (D.C. Cir. 1993) ("stating that although the severity of injury is not by itself the basis for

deciding whether the force used was excessive … it is a relevant factor.")). "An officer will be found to have used excessive force only if the force used was so excessive that no reasonable officer could have believed in the lawfulness of his actions." *Garay v. Liriano,* 943 F. Supp. 2d 1, 19 (D.D.C. 2013).

Plaintiff has alleged that Officer Roberts violated her Fourth Amendment right under 42 U.S.C. § 1983, when he allegedly used excessive force in arresting her. *See* Complaint, Count One, ECF #1-4. Before even reaching the issue of qualified immunity, Defendant's use of force based on the uncontroverted video evidence was objectively reasonable under the Fourth Amendment standard set forth in *Graham*, requiring judgment in his favor. *See* Section VII.A *infra.* Under a similar analysis, Defendant's use of force for Plaintiff's common law tort claims of assault and battery was reasonably necessary, and therefore privileged. *See* Section VIII, *infra.*

## A.    The Uncontroverted Video Evidence And Other Undisputed Facts Render Plaintiff's Allegations of Roberts' Use of Excessive Force A Visible Fiction Which Must Be Dismissed

A plaintiff's claim that an officer has used excessive force is to be analyzed under the Fourth Amendment and its objective reasonableness standard. *Graham v. Connor,* 490 U.S. at 390- 95. Plaintiff claims that Defendant Roberts used excessive force when:

- She was  pepper sprayed;

- She was pulled to the ground by her hair;

- Her arm was violently twisted;

- Defendant slammed his knee into Plaintiff's side;

- Officer Roberts slammed his knee in Plaintiff's stomach;

- Officer Roberts "choked" Plaintiff.

21

Complaint,  Counts One -Five, ECF # 1-4 .

Officer Roberts used a short burst of OC spray on Plaintiff, only after she was told that she was under arrest, failed to obey his commands, tried to evade him, and leave the station; the video evidence renders remainder of Plaintiff's allegations of force a nullity. SMF ¶¶ 46-76 . There evidence shows a demonstrably different story than the one Plaintiff alleges in her Complaint. Like the D.C. Circuit *in Lash v. Lemke, supra*, this Court is confronted with video evidence that wholly discredits Plaintiff's allegations regarding Roberts use of force, except for that of being pepper-sprayed. All of  Plaintiff's excessive force allegations, therefore, save the latter one, fall into the category the Circuit describes as "visible fiction."

## B.  Roberts Use of Pepper Spray Was Not Excessive

As noted previously in the jurisdiction, there is no case in the D.C. Circuit which has held that the use of OC spray (pepper spray) on an assaultive and unrestrained suspect is a constitutional violation. *Wilkins v. District of Columbia, et al*., 2020 WL 581691 *12, No. 17-884 (CKK) (09/30/2020). A review of other circuits in the country, however, provides a governing principle regarding the use of OC spray which may be distilled to the following:  the use of pepper spray is unreasonable if deployed on a restrained and compliant individual. *Id. See, e.g., Henry v Cty of Flint, Mich*., 814 F. App'x 973, 983 (6th Cir. 2020) (Not excessive force to use pepper spray to induce compliance in suspect trying to get away).

Here, Roberts informed Plaintiff that she was under arrest, and then she remained unrestrained and non-compliant with Officer Roberts, who approached her with handcuffs. SMF ¶ 42. She tried to get away, knowing that Officer Roberts was trying to arrest her. SMF ¶ 43. The short burst of spray was meant to induce compliance. The video evidence shows it did not stop Plaintiff in continuing to keep trying to flee from Officer Roberts and leave the station. SMF ¶

49. It took Officer Roberts and a fellow MTPD more than five minutes of working together to gain control of Plaintiff during her active resistance, *even after* the Office Roberts deployed his OC spray. SMF ¶¶ 55-73. For these reasons, it is clear that Officer Roberts' use of force was not excessive and was therefore, within the constitutional bounds of objectively reasonable force, entitling him to qualified immunity from Plaintiff's constitutional tort claim of excessive force under § 1983 in Count One for his use of OC spray.

Furthermore, there is no case law in this Circuit that would put Officer Roberts on notice that it was unlawful to use OC spray on a suspect who had assaulted an officer, refused to obey his commands to be placed under arrest, and fled from him, seeking her escape. Plaintiff cannot defeat either of the two prongs needed to defeat Roberts entitlement to qualified immunity from Plaintiff's claims of excessive force for the use of OC spray under Count One. Wherefore, Roberts must be granted summary judgment on this issue.

### C. Video Evidence Shows That Officer Roberts Did Not Pull Her To the Ground By Her Hair, Choke Her, Violently Twist Her Arm, Or Slam His Knees Into Her Stomach And That His Use Of Force Was Reasonable

For the remainder of Plaintiff's claims of excessive force, the video evidence demonstrates conclusively that Officer Roberts ***did not*** choke Plaintiff; he did not pull her by the hair to the ground; he did not violently twist her arms or slam his knees into Plaintiff's stomach or into her side. SFM ¶¶ 31-75. No such acts occurred. *Id*.

It is well settled that the *use of* an officer's knees and body weight, are reasonable in the context of a suspect resisting arrest or of evading arrest by attempted flight. *See, e.g., Armbruster v. Frost*, 962 F.Supp.2d 105, 114 (D.D.C., 2013). In *Armbruster*, the District Court reviewed allegations that the plaintiff was brought to the ground by an officer; while a second officer

secured plaintiff's right arm, the first officer placed his knee over her left arm and then on her back while handcuffing her. *Id.* The Court held that no excessive force occurred under the facts of that case. *Id.* The Court explained that since the officers had not been successful in subduing the plaintiff earlier, it was reasonable to take additional action to restrain the Plaintiff. *Id. See also Cromartie v. District of Columbia*, 479 F. App'x 355, 357 (D.C. Cir. 2012) (per curiam) (a plaintiff slammed to the ground and forcibly there kept by officers while handcuffed falls within realm of the usual amount of force commonly used by officer to effect an arrest).

Plaintiff has candidly admitted to resisting arrest. SMF ¶ 51. At the time that she was resisting arrest, Robert had not handcuffed her, so that she remained unrestrained. Under a totality of circumstances, the facts of this case are most closely aligned with prior cases finding more serious uses of force to be objectively reasonable for a resisting and fleeing suspect. *See Rogala v. District of Columbia*, 161 F.3d at 54 (pulling plaintiff from her car by her arm and throwing her to the ground was reasonable because she was resisting arrest); *Scott v. District of Columbia*, 101 F.3d, 748, 759 (D.C Cir. 1996) (officers grabbing plaintiff and slamming him to the ground, and putting their knees on his neck, back, and legs was reasonable where plaintiff acted erratically and tried to escape from the police cruiser); *Martin v. Malhoyt*, 830 F.2d 237, 262 (D.C. Cir. 1987) (officers grabbing plaintiff around the waist, throwing him into driver's seat, and slamming the door on his leg was reasonable because plaintiff was causing a traffic hazard and was a flight risk); *Robinson v. District of Columbia*, 2006 WL 2714913, at *4 (pushing plaintiff, shoving him into the hood of his car, holding him down while putting handcuffs on him was reasonable to effect the arrest).

There is an abundance of cases in this jurisdiction where more serious uses of force than the minimal force Roberts used in arresting Plaintiff' were held to be objectively reasonable. In

*Cutchin v. District of Columbia*, *supra,* two officers who arrested a subject for fare evasion, pinned the suspect to the ground using an officer's full body weight while squeezing the handcuffs tighter, were held to have used reasonable force. *Cutchin,* 369 F.Supp.3d at 128. Although the plaintiff may have experienced pain or discomfort, that court held that the plaintiff's pain and discomfort did not render the officers' use of force unreasonable. *Id*.

In *Cromartie v. District of Columbia*, the plaintiff was slammed to the ground by officers and forcibly kept there while handcuffed; however, the officers' use of force was held to be no more than the ordinary type of force used by officers in effecting an arrest. *Cromartie v. District of Columbia*, 479 F. App'x at 357. In *Oberwetter v. Hilliard*, 639 F.3d 545, 555 (D.C. Cir. 2011), the court ruled that the officers' use of force was not excessive where the plaintiff's arm was pulled behind her back and she was pushed against a stone column. *Id*. In *Wasserman v. Rodacker*, 557 F.3d 635, 641 (D.C. Cir. 2009), the arresting officer applied force to the plaintiff's arm when plaintiff was not resisting or moving; the court held that the force was not excessive because officers have the authority to use some "degree of coercion" to gain compliance in effecting an arrest. *Id.* Finally, in *Goolsby v. District of Columbia*, 317 F.Supp.3d 582, 594-95 (D.D.C 2018), the court found that the arresting officer did not use excessive force when he violently slammed the plaintiff to the ground and twisted the plaintiff's arms in order to handcuff him.

Except for use of the pepper spray, the force Roberts used on Plaintiff, *i.e.*, holding her arm, pulling off the escalator, briefly holding her head, handcuffing her - all occurred during the period where Plaintiff admits that she resisted arrest, and where the video evidence corroborates this fact. SMF ¶¶ 51,52, 60-73. The D.C. Circuit has held that a U.S. Park Police officer who *deployed her Taser* on a subject who was resisting arrest by pulling away twice did not use

excessive force. *Lash v. Lemke*, 786 F.3d 6. There, the Circuit court relied on video evidence in arriving at its decision that no excessive force was used in deploying the Taser,[3] rejecting as "visible fiction" Lash's protestations that he did not resist arrest. *Id*. at 7. The Court held that the force used by Officer Lemke violated no clearly established law and she was entitled to qualified immunity. *Id.*

The plaintiff in *Lash v. Lemke* denied that he resisted arrest; here, Plaintiff *admits* that she resisted arrest and the video evidence show her resisting arrest. SMF ¶ 51. Like plaintiff Lash, Plaintiff was arrested for a misdemeanor. Like Lash, she tried to evade and flee from the arresting officer. SMF ¶ 51, 61-76. Unlike Lash, she made more than the two attempts to pull away from her arresting officer, a standard that the D.C. Circuit has previously held to be legally sufficient to constitute resisting arrest in *Lash v Lemke* and to justify the use of a Taser; in fact, Plaintiff struggled against Roberts multiple times. SMF ¶¶ 51; 6-73. Like Lash, Plaintiff refused to allow the officers to handcuff her, and instead, resisted by kicking and flailing her legs; spreading out her legs out, pressing her feet to the ground against lateral pressure from Roberts, to prevent him from rolling her onto the stomach to handcuff her; and, refusing to give her hands to Roberts willingly or put them behind her back. *See* SMF ¶¶ 51, 61-76.

The force used by Officer Roberts was well below the level of the force of a Taser deployment and was within the accepted standard of what has been held to be objectively reasonable by the Supreme Court and this jurisdiction. Roberts did not violate Plaintiff's Fourth Amendment rights in the force her used to arrest and handcuff her. Plaintiff's claim for excessive force under 42 U.S.C. § 1983 must be dismissed as a matter of law and summary judgment must

---

[3] The video footage, described in detail in the Court's opinion, may be seen on the internet at the following IP address:  https://www.youtube.com/watch?v=DrsAgDdbE3I&feature=emb_logo

be granted to Roberts because all of Roberts' use of was objectively reasonable and there no

clearly established law that would have put him and every reasonable officer on notice that his

actions were unlawful.

**D.    ROBERTS' ACTIONS WERE REASONABLY NECESSARY AND PRIVILEGED, REQUIRING DISMISSAL OF PLAINTIFF'S CLAIMS OF ASSAULT (COUNT THREE) AND BATTERY (COUNT IV).**

Assault and battery are two  "conceptually distinct" torts under District of Columbia law.

*District of Columbia v. Chinn*, 839 A.2d at 706 n.2 (D.C. 2003). A battery is an intentional act,

causing "harmful or offensive bodily contact." *Id*. (internal citations omitted). An assault is an

"intentional and unlawful *attempt or threat*, either by words or acts, to do physical harm to the

plaintiff."  *Id.*at 705 (internal citations omitted).

Plaintiff ignores this conceptual difference. The allegations upon which she relies for her

assault count, save one, do not meet the definition of "attempts or threats."  *See* Complaint, ¶¶

71-75. Instead, she alleges *completed acts*: being pulling her to the ground by her hair, having

her arm violently twisted, and Roberts slamming his knee into her side. *Id*. These allegations do

not meet the definition of assault under District of Columbia tort law. More importantly, they are

*visible fictions*. Roberts' uncontroverted BWC and station video evidence negate Plaintiff's

allegations. *See Lash v. Lemke, supra*; SMF  ¶¶ 49-76. These visible fictions are the same

allegations upon which Plaintiff relies for her battery claim in Count IV, *infra*.

Plaintiff made one allegation in Count Three that arguably meets the definition of a

tortious assault in this jurisdiction -- that Roberts "threatened" Plaintiff with pepper spray. *See*

Complaint, ¶¶ 71-75. This claim is both a visible and audible fiction. The BWC video captures

the statements of the parties, negating Plaintiff's claim that Roberts verbally "threatened"

Plaintiff with pepper spray. Roberts never verbally expressed any statement about his use of OC

spray. *See* Exhibit 5, Roberts BWC at 9:31:08- 9:31:20.   As to Roberts' actions, are perhaps ten

seconds from the time Roberts takes out his OC spray and Roberts actually *deploying* his OC

spray. SMF ¶¶ 38-48. During this same period Roberts told Plaintiff she was under arrest and in

response, Plaintiff approached Roberts in a way that led Roberts to believe that she might

become aggressive with him again and he pulled out his OC spray. SMF ¶¶ 39-42. Plaintiff

subsequently evades Roberts several times, while he holds out his handcuffs out at the kiosk, and

immediately after when she walks briskly by him to the station exit. SMF  ¶¶ 38-48. Ten seconds

after getting the OC spray out, Roberts deploys his OC spray. There is no attempt or threat – just

actual deployment, which by definition is a battery, for which Roberts is clothed with privilege.

For these reasons, Plaintiff's claim of assault in Count Three must be dismissed and summary

judgment granted to Defendant.

   Roberts' actual – and limited - use of force against Plaintiff is privileged conduct under

the law. It is well-settled law that any officer who effects any arrest at all commits a battery.

*District of Columbia v. Chinn*, at 706. Where the officer only uses the amount of force that the

officer reasonably believes is necessary, the officer will be "clothed with privilege" for that

"battery."  *Id*. "This standard is similar to the excessive force standard applied in the Section

1983 context."*Rogala v. District of Columbia*, 161 F.3d at 57. Consistent with Fourth

Amendment standards, the reasonableness of the officer's force must be  judged from the

perspective of a reasonable officer on the scene. *Chinn*, 839 A.2d at 706 (internal citations

omitted).

   Defendants incorporate their arguments from Section VII *supra*, regarding the visible

fiction Plaintiff alleges regarding Roberts' use of force against her that does not exist on the

video evidence. SMF ¶¶ 51-76. Plaintiff was not choked or forced to the ground by Roberts

pulling her hair. SMF ¶¶ 51-76  Officer Roberts did not slam his knees into her sides or stomach; he did not violently twist her arms. SMF ¶¶ 51-76.

Defendant enjoys a qualified privilege for his reasonable use of force as to Plaintiff's claims of assault and battery. "District law provides a government actor with a privilege defense to such tort claims when (1) he or she believed, in good faith, that his or her conduct was lawful, and (2) [his or her] belief was reasonable." *Hargraves v. D.C.,* 134 F. Supp. 3d at  90.

Given the video evidence and the other uncontested facts of this case, Officer Roberts reasonably believed their conduct was lawful, as would any objectively reasonable police officer who was similarly situated. SMF ¶ 71. Wherefore, for these reasons, Defendant Roberts is entitled to the defense of qualified privilege for his reasonable use of force against Plaintiff, who was resisting and noncompliant during her arrest and Counts Three and Four must be dismissed and judgment granted in Defendant's favor.

## CONCLUSION

Wherefore, for the reasons stated herein, and for other and such good cause as this Court deems necessary, Defendants moves that all five counts against him of Plaintiff's Complaint be dismissed as a matter of law and judgment granted in his favor, and that Plaintiff's Complaint be dismissed with prejudice.

Respectfully Submitted,

/s/ Janice L. Cole
Janice L. Cole #440351
Senior Counsel II
300 Seventh Street,
Washington, D.C. 20001
(202) 962-2543
(202) 962-2550 (facsimile)